IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JOHN T. ADCOCK, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| vs. | : | 5:04-CV-208 (DF) |
| | : | |
| JAMES G. ROCHE, Secretary of | : | |
| the United States Department of | : | |
| the Air Force, | : | |
| | : | |
| **Defendant.** | : | |

# O R D E R

This is an action to enforce agency compliance with an administrative decision rendered by the Equal Employment Opportunity Commission (EEOC) in 2002. In that decision, the EEOC ordered remedial relief against the United States Air Force after concluding that Plaintiff John T. Adcock's former employer, Robins Air Force Base (RAFB), located in Warner Robins, Georgia, discriminated against him on account of his physical disability, in violation of the Rehabilitation Act of 1973, 29 U.S.C.A. § 701 *et seq*.

Following the EEOC's decision, Adcock, believing that the Air Force had not taken appropriate measures to comply with the ordered relief, filed a petition for enforcement with the EEOC under 29 C.F.R. § 1614.503(a). Upon consideration of Adcock's petition for enforcement, the EEOC, on April 6, 2004, concluded that there

was nothing to enforce because the Air Force had fully discharged its obligations as set forth in the 2002 decision.  Not satisfied with that determination, Adcock filed this lawsuit on July 2, 2004, against Defendant James G. Roche, the Secretary of the United States Air Force, alleging that the Air Force's "bogus, half-hearted" attempt to comply with the 2002 decision is tantamount to noncompliance and that, as a result, the EEOC's compliance determination is erroneous.  This enforcement action is brought under the Rehabilitation Act, 29 U.S.C.A. § 701 *et seq*. (West Supp. 2005) and its implementing regulations.

Currently pending before the Court is Roche's motion for summary judgment (doc. 21).  Because Adcock is unable to establish a fact necessary to support his civil enforcement action, Roche's motion is **GRANTED.**

## I.  BACKGROUND

John T. Adcock worked as a civilian employee at Robins Air Force Base in Warner Robins, Georgia, from 1989 to July 1996.  He was employed as a sheet metal worker responsible for maintaining the C-141 aircraft.  In 1992, after suffering an on-the-job back injury, Adcock was diagnosed with arthritis, herniated discs, and degenerative disc disease.  As a result of this diagnosis, Adcock's physician recommended that he be put on light duty, which restricted him from lifting or carrying heavy objects, bending, crawling, or twisting his back.

Adcock carried out his light-duty assignment for the next three and a half years in the bench stock area, or "fastener cage" as it was later referred to by the EEOC, an area that housed supplies necessary for maintaining the C-141 aircraft. Adcock's duties in the fastener cage included: giving parts to mechanics upon request, taking inventory of the in-stock parts, ordering parts, stocking supplies when delivered, and organizing excess, unused parts. During this time, Adcock was disqualified (initially in March 1994 and then again in November 1994 and July 1995 after further evaluations) by RAFB Occupational Medicine Officer Dr. J.W. Burnham from performing the duties associated with his former position as a sheet metal worker. These disqualifications landed Adcock on RAFB's physically disqualified list, which RAFB's Career Counseling office periodically reviewed with an eye toward placing individuals from the list in suitable positions as they became available. During 1995 and 1996, the Career Counseling office considered Adcock for roughly fifteen different positions at RAFB, but supervisors in the various departments declined to accept Adcock's placement because, in their estimation, Adcock did not possess the requisite knowledge to adequately perform the jobs for which he was considered.

On February 15, 1996, Adcock received from RAFB a Notice of Proposed Separation, which explained that he was being considered for termination because Dr. Burnham had consistently found him medically incapable of performing the duties

associated with his former position as a sheet metal worker and because repeated efforts to accommodate his medical condition had proven unsuccessful.  Adcock responded to the RAFB's separation proposal on March 7 by requesting an accommodation to another position, but on May 22, 1996, after considering Adcock's response, RAFB issued its final Notice of Decision to Separate.  RAFB required Adcock to exhaust his accumulated sick leave from May 29 to the effective date of his termination on June 30.

Concerned that he had been discriminated against on account of his back disability, Adcock met with EEO Counselor Bonnie Higdon on June 10 in an effort to resolve informally his allegation of discrimination.  Informal resolution failed, and Higdon issued a Notice of Final Interview on September 10.  Thereafter, Adcock filed a formal complaint of discrimination with his employing agency, the United States Air Force, on September 25, 1996.  Adcock's complaint was investigated by the Defense Department's Office of Complaint Investigation (OCI), which, on February 3, 1997, recommended that Adcock's discrimination claim be denied.

Upon receipt of the OCI's recommendation, Adcock asked the EEOC to appoint an administrative judge (AJ) to hold a hearing on his claim.  An AJ was appointed, and a hearing was held on December 11-12, 1997.  On March 23, 1998, the AJ issued a Recommended Decision, finding that the Air Force unlawfully

-4-

discriminated against Adcock by failing to accommodate his disability.  The AJ recommended that Adcock be reinstated to his former position and that he receive backpay and compensatory damages, as calculated by the Air Force.

The AJ's findings were forwarded to the Air Force for final agency action.  On June 18, 1998, the Air Force, in a written opinion, rejected the AJ's recommendation on the basis that the AJ was not authorized under the applicable regulations to adjudicate mixed-case complaints.[1]  The Air Force then proceeded to consider the merits of Adcock's discrimination claim, concluding that Adcock's "physical restrictions do not render him a person with disabilities within the meaning of the Rehabilitation Act or 29 C.F.R. Part 1614 because his condition does not appear to substantially limit a major life activity."  Decl. Bonnie Higdon, doc. 4, Ex. C at 9. Thus, the Air Force's final action was a finding of no discrimination.  The Air Force notified Adcock of his right to seek an administrative appeal[2] or to file a civil action in federal court to receive *de novo* treatment of his discrimination claim.  Adcock chose not to file a civil action.

---

[1] *See* 29 C.F.R. § 1614.302 (2005) (defining mixed-case complaints).

[2] The Air Force notified Adcock that any administrative appeal he decided to pursue must be filed with the Merit Systems Protection Board (MSPB), not with the EEOC, because his discrimination claim was presented in a mixed-case complaint. *See* Decl. Bonnie Higdon, doc. 4, Ex. C at 13.  Adcock appealed to the EEOC anyway, and the EEOC rejected the Air Force's suggestion that it was without authority to adjudicate the appeal. *See* Decl.. Bonnie Higdon, doc. 4, Ex. D at 1.

Adcock next appealed the Air Force's final action to the EEOC.[3]  In a decision dated February 6, 2002, the EEOC reversed the Air Force's no-discrimination determination, affirmed the findings and conclusions of the AJ, and ordered the Air Force to take certain remedial actions to resolve Adcock's discrimination claim. As part of the remedial relief ordered, the EEOC commanded the Air Force to make one threshold finding, the resolution of which would determine whether any further actions by the Air Force were warranted:  "The agency shall determine if the fastener cage position or an equivalent position exists at Robins Air Force Base."  Decl. Bonnie Higdon, doc. 4, Ex. D at 2.  According to the EEOC decision, the Air Force was required to take further remedial action only if the answer to the threshold question was "yes."  If the Air Force answered the question "no," its obligations under the EEOC's decision terminated, and the agency was not required to take any further action with respect to Adcock's claim.

The Air Force timely asked the EEOC to reconsider its decision.  The EEOC denied the Air Force's request in a decision dated September 16, 2002. In the decision denying reconsideration, the EEOC stated that its February 2002 decision "remains the Commission's final decision" and repeated verbatim the

_____

[3] The department charged with hearing appeals to the EEOC from final agency action (and issuing decisions on such appeals) is the Office of Federal Operations.  *See* 29 C.F.R. §§ 1614.404(a) & 1614.405(a) (2005).  The Court will refer solely to the EEOC throughout this Order.

remedial relief ordered in the February decision, including the threshold question posed to the Air Force concerning whether the "fastener cage position or an equivalent position exists at Robins Air Force Base."  Decl. Bonnie Higdon, doc. 4, Ex. G at 2.  The EEOC notified Adcock that he had no right to further administrative appeal but that he did have a right to bring a civil action within 90 days of receiving the EEOC's decision.  Happy with the EEOC's final decision, Adcock did not take advantage of his right to file a *de novo* civil action.

Some three months after the EEOC issued its final decision on appeal, Adcock came to believe that, because he had not been reinstated at RAFB, the Air Force had failed to comply with the remedial relief ordered in the September 2002 decision. On December 2, 2002, Adcock mailed to the EEOC a petition to enforce the remedial relief ordered in the September 2002 decision.  In his petition, Adcock maintained that, under the terms of the EEOC's decision, the Air Force had an obligation to "reinstate me to my former job" and that, because he had not been reinstated, the Air Force was therefore not in compliance.  The EEOC docketed Adcock's petition for enforcement on November 6, 2003, and gave the parties twenty days within which to submit evidence regarding the issue of the Air Force's compliance.

On April 6, 2004, the EEOC rendered a decision on Adcock's petition for enforcement, concluding that "the agency has *fully complied* with the order for relief

set forth in the previous [September 2002] decision." (emphasis added)  Decl. Bonnie

Higdon, doc. 4, Ex. J at 2.  The EEOC noted that the Air Force submitted evidence

showing that affirmative steps had been taken to determine whether the fastener cage

position (or its equivalent) ever existed at RAFB.  The Air Force, after investigating

the matter, concluded that it had not.  The EEOC further stated that Adcock had failed

to carry his burden of demonstrating by a preponderance of the evidence that the Air

Force's conclusion—that no fastener cage or other equivalent position ever

existed—was false.  In its decision on Adcock's petition for enforcement, the EEOC,

without citing any legal authority, informed Adcock that he could bring a civil action

within 90 days from the date on which he received the EEOC's order finding

compliance.  Adcock took the EEOC at its word.

He filed the instant lawsuit on July 2, 2004.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment must be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and . . . the moving party is entitled

to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also* **Celotex Corp. v.**

**Catrett**, 477 U.S. 317, 322 (1986).  A genuine issue of material fact necessary to

defeat a properly supported motion for summary judgment arises only when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986).  The Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but may not make credibility determinations or weigh the evidence. *See Anderson*, 477 U.S. at 249.  Finally, "the evidence presented cannot consist of conclusory allegations or legal conclusions." ***Avirgan v. Hull***, 932 F.2d 1572, 1577 (11th Cir. 1991).

## III.  DISCUSSION

It is important to clarify at the outset what Adcock is not trying to accomplish through this lawsuit:  Adcock is not asking this Court to engage in a *de novo* review of his underlying discrimination claim against RAFB—the parties agree on this point. *See* Parties' Joint Mot. Leave File Am. Compl., doc. 11, at 1; *see also* Pl.'s Brief Resp. Def.'s Mot. Dismiss, doc. 7, at 4.

Instead, Adcock has filed a civil enforcement action.[4]  Adcock seeks an order

---

[4] Overlooking the antecedent question whether a civil enforcement action, brought under the circumstances present here, even states a claim for relief under the Rehabilitation Act or its implementing regulations, the parties' briefs proceed directly to the remaining merits of Adcock's claim for enforcement—that is, whether the Air Force has in fact complied with the remedial relief ordered by the EEOC in its September 2002 decision. *See Laber v. Harvey*, 438 F.3d 404, 417 (4th Cir. 2006) (en banc) ("In a suit for enforcement, the issue is not liability or the remedy, as it is in a civil action, but rather whether the federal employer has complied with the [EEOC's] remedial order.").  For the reasons discussed below, the Court does not examine the efforts taken by the Air Force to comply with the EEOC decision.

from this Court directing the Air Force to comply with the remedial relief ordered by the EEOC in its September 2002 final decision.  *See* Second Am. Compl., doc. 11, at 7 ("Plaintiff respectfully prays [that] . . . Defendant be *forced to comply* with the February 6, 2002 and September 16, 2002 orders entered by the EEOC under 29 C.F.R. § 1614.503.").[5]  Yet the EEOC has already concluded that the Air Force fully complied with the 2002 decision.  Indeed, it is this determination by the EEOC—i.e., that the Air Force has complied with its previous decision—that renders a civil enforcement action unavailable to Adcock under the Rehabilitation Act and its implementing regulations.  Therefore, Adcock's enforcement action must fail.[6]

### A.   Administrative Framework Applicable to Discrimination Claims Under the Rehabilitation Act

Federal-sector employment discrimination claims are governed by an intricate, detailed regulatory regime, the understanding of which is essential to understanding why Adcock's enforcement action is inappropriate.  The Court will thus briefly

---

[5] The relief ordered in the February 6, 2002, and September 16, 2002, decisions is identical; thus, for simplicity's sake, the Court refers only to the September 2002 decision.

[6] Adcock's brief in opposition to Roche's motion for summary judgment makes it look as though he is challenging under the Administrative Procedure Act (APA), 5 U.S.C.A. §§ 702, 704 & 706, either: (1) the Air Force's failure to reinstate him to RAFB, or (2) the EEOC's compliance determination on his petition for enforcement.  *See* Pl.'s Br. Opp'n Def.'s Mot. Summ. J., doc. 27, at 7.  The APA is nowhere mentioned in Adcock's complaint, however, and the Court therefore regards him as not having stated a claim for relief under that Act.  Adcock's suit is properly characterized as a civil enforcement action, as he states that it is brought under the Rehabilitation Act and clearly asks that "Defendant be forced to comply with" the EEOC's 2002 decision.

outline the administrative process applicable to discrimination claims by federal employees.

The Rehabilitation Act of 1973 makes it unlawful for a federal agency to discriminate against an "otherwise qualified" federal employee with a disability "solely by reason of . . . his disability."  29 U.S.C.A. § 794 (West Supp. 2005). A federal employee who believes that his employing agency has discriminated against him in violation of the Rehabilitation Act is required to file an administrative complaint with the agency. *See* 29 C.F.R. § 1614.106.  The agency must then investigate the claim.  *See* 29 C.F.R. § 1614.108.  If the agency concludes that no discrimination has occurred, it may, upon request of the employee, issue a final agency decision to that effect, *see* 29 C.F.R. § 1614.110(b), thereby allowing the employee to appeal that decision to the EEOC.  *See* 29 C.F.R. § 1614.401. Alternatively, the employee may forgo asking the agency to issue a final decision on the claim, and may instead request a hearing before an administrative judge appointed by the EEOC.  *See* 29 C.F.R. § 1614.109(a).

If the employee chooses the latter course, as Adcock did in this case, the administrative judge will hold a hearing on the employee's claim and issue a written decision, *see* 29 C.F.R. § 1614.109(i), which the agency may then either accept or reject by issuing its own final order, *see* 29 C.F.R. § 1614.110(a), from which the

employee may appeal to the EEOC.  *See* 29 C.F.R. § 1614.401.

If, on appeal, the EEOC finds that the agency discriminated against the employee, it has the authority, unlike in the context of private-sector discrimination claims, to order mandatory corrective action, binding on the agency.  *See* 42 U.S.C.A. § 2000e–16(b); 29 C.F.R. § 1614.502(a).

The agency found by the EEOC to have engaged in workplace discrimination has no right to seek judicial review of the EEOC's resolution of the employee's claim. The employee, on the other hand, has two avenues into federal court.  First, within 90 days of receiving a final EEOC decision on appeal, if the employee is "aggrieved" by that decision, he may initiate a "civil action" seeking *de novo* review of his discrimination claim.  *See* 29 C.F.R. § 1614.407(c); 42 U.S.C.A. § 2000e–16(c).  The right of action afforded by § 2000e–16(c) is identical to the right of action afforded to private-sector employees who have received a right-to-sue letter from the EEOC. *See **Chandler v. Roudebush***, 425 U.S. 840, 864 (1976).  Adcock never filed a civil action seeking a trial *de novo* on his discrimination claim.

Second, as explained below, the employee may, if certain conditions are satisfied, be entitled to seek judicial enforcement of the EEOC's underlying decision. These conditions have not been satisfied here.

-12-

###### B.      Administrative Enforcement of a Final EEOC Decision

To appreciate when an employee may bring a civil action to enforce an underlying EEOC decision and when he may not, it is important to recognize the role of the EEOC in enforcing its own decisions.  If after receiving from the EEOC a favorable ruling on appeal—for instance, a finding of agency discrimination coupled with an order directing the agency to provide the employee with remedial relief—the employee comes to believe that the agency has failed to comply with the relief ordered, he is authorized to file a petition for enforcement with the EEOC.  *See* 29 C.F.R. § 1614.503(a).[7]  Once a petition for enforcement is filed, the Office of Federal Operations (OFO), acting on the EEOC's behalf, must "take all necessary action to ascertain whether the agency is implementing [the EEOC's prior] decision." 29 C.F.R. § 1614.503(b).  The OFO is authorized to clarify (but not substantively alter) the prior EEOC decision or, if unsatisfied with the agency's compliance efforts, may submit recommendations for enforcement to the EEOC, *see* 29 C.F.R. § 1614.503(c) & (d), and the EEOC may thereafter issue a notice to the head of the agency requiring him or her to show cause for the agency's non-compliance.  *See* 29 C.F.R. § 1614.503(e).

---

[7] The following analysis proceeds on the assumption that the employee has sought a petition for enforcement from the EEOC, and not headed straight for federal court.

Once administrative review of the enforcement petition is complete, the EEOC shall so notify the employee:

> Where **the [EEOC] has determined** that an agency is **not complying** with a prior decision, or where an agency has **failed or refused to submit** any required report of compliance, the [EEOC] shall notify the complainant of the right to file a civil action for enforcement of the decision pursuant to Title VII, the ADEA, the Equal Pay Act or the Rehabilitation Act and to seek judicial review of **the agency's refusal to implement the ordered relief** pursuant to the Administrative Procedure Act, 5 U.S.C. 701 *et seq.*, and the mandamus statute, 28 U.S.C. 1361, or to commence *de novo* proceedings pursuant to the appropriate statutes.

29 C.F.R. § 1614.503(g) (emphasis added). Section 1614.503(g) is the sole provision in either the Rehabilitation Act or its implementing regulations that mentions civil enforcement actions.

As is indicated by the plain terms of subsection (g), an employee's claim for judicial enforcement is proper only where the EEOC determines that the agency is not in compliance with its previous decision, or where the agency has failed to submit a compliance report.

Neither of these prerequisites to suit is met here: To the contrary, (1) the EEOC has determined that the Air Force is in full compliance with its prior decision; and (2) the Air Force has submitted to the EEOC all required compliance reports. *See* Decl. Bonnie Higdon, doc. 4, Ex. J at 1. A number of courts have observed that

-14-

§ 1614.503(g) forecloses a civil enforcement action where the EEOC has found the agency to be in compliance with its previous decision.  *See Timmons v. White*, 314 F.3d 1229, 1232 (10th Cir. 2003) ("Obviously, if [plaintiff's] action constituted an enforcement action, the lack of an EEOC determination of non-compliance, *which is a prerequisite to such a suit*, would have rendered the grant of summary judgment in favor of Defendant appropriate on that ground.") (emphasis added); *Puckett v. Potter*, 342 F. Supp. 2d 1056, 1064 (M.D. Ala. 2004) (noting that "the regulations governing [EEOC] [findings of] compliance [ ] do not provide for judicial review of such EEOC final determination"); *Tshudy v. Potter*, 350 F. Supp. 2d 901, 906 (D.N.M. 2004) ("In order for this Court to have jurisdiction over Plaintiff's enforcement action, there must have been an EEOC determination of non-compliance.");[8] *Daly v. Runyon*, No. 95-C-5954, 1996 WL 754112, at *3 (N.D. Ill. 1996) ("It is only when the EEOC determines that an agency has failed to comply with an EEOC ruling, that a plaintiff may seek his right of judicial review [under] 29 C.F.R. § 1614(g).").  The Court agrees with the view expressed by these courts.

---

[8] Unlike the court in *Tshudy*, this Court does not view the compliance determination as placing a limit on the Court's jurisdiction, but rather as going to the merits of a proper claim for judicial enforcement. *See Arbaugh v. Y&H Corp.*, 126 S.Ct. 1235, 1245 (2006) ("If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts an litigants will be duly instructed and will not be left to wrestle with the issue. . . .  But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in nature.").

The Court notes that the EEOC, in its April 6, 2004, decision on Adcock's petition for enforcement, informed Adcock (in the same boilerplate language used in the September 2002 decision) of his right to file a civil action within 90 days. Adcock complied with that 90-day deadline, filing suit on July 2, 2004.  However, because a civil enforcement action brought under the circumstances presented here—in the face of an EEOC finding of agency compliance—is plainly foreclosed by the terms of the governing regulation, § 1614.503(g), the Court must conclude that the EEOC's notice to Adcock was given in error.[9]

It may be argued that Adcock derives his right to file a civil action from § 1614.407(c).  Presumably this is the regulatory provision the EEOC had in mind when it informed Adcock of his right to bring a civil action within 90 days of April 6, 2004.   But §1614.407(c) permits an employee pursuing relief under the Rehabilitation Act "to file a civil action in an appropriate United States District Court . . . [w]ithin 90 days of receipt of the [EEOC's] final decision *on an appeal*." (emphasis added).  The EEOC's compliance determination, rendered not on an appeal from the Air Force's final action but rather upon consideration of Adcock's petition for enforcement, cannot fairly be considered a final decision "*on an appeal*." The EEOC's final decision on Adcock's appeal from the Air Force's final action

---

[9] Tellingly, in ***Tshudy***, after concluding that the United States Postal Service had complied with its previous decision, the EEOC did *not* notify the plaintiff of his right to file a civil enforcement action under § 1614.503(g).  350 F. Supp. 2d at 906 n.2.

was rendered on September 16, 2002—the date on which the EEOC denied the Air Force's request for reconsideration.  The time for commencing a civil action under § 1614.407(c) had thus long since passed by July 2, 2004.

Additionally, the type of civil action contemplated by § 1614.407(c) is a civil action for *de novo* review of a employee's discrimination claim, which is authorized by 42 U.S.C.A. § 2000e–16(c).  *See **Laber v. Harvey***, 438 F.3d 404, 416 (4th Cir. 2006) (en banc).  Section 1614.407(c) does not contemplate an enforcement action brought to compel compliance with an underlying EEOC decision in a situation where, as here, the EEOC has already made a determination that the agency is in compliance.  A contrary reading of § 1614.407(c) would directly conflict with the plain terms of § 1614.503(g), the more specific regulatory provision detailing the circumstances under which a civil enforcement action may be brought—only upon an EEOC finding of agency non-compliance, or upon the agency's failure or refusal to submit a required compliance report.

The central question in this case reduces to this:  Where the EEOC— the regulatory body empowered by statute to issue binding relief and to enforce compliance with its own decisions in the federal-sector discrimination context —concludes that an offending agency has fully complied with a decision requiring that agency to take specific measures to remedy past discrimination, are federal courts

-17-

authorized by the Rehabilitation Act to second-guess the EEOC's compliance determination?  The Rehabilitation Act and its implementing regulations answer this question:  No.

With respect to civil enforcement actions brought after an employee has first petitioned the EEOC for administrative enforcement, requiring the employee to demonstrate an EEOC finding of non-compliance is a modest means of respecting the EEOC's authority to decide whether, in a given situation, federal court intervention is necessary to enforce agency compliance.  Such a requirement not only respects the EEOC's role in enforcing its own decisions, it is also compelled by the unambiguous terms of § 1614.503(g).

Thus the Court concludes that, under the present circumstances, where the EEOC has determined that the Air Force is in full compliance with its prior decision, Adcock's civil enforcement action fails to state a claim for relief under § 1614.503(g) or any other provision of the Rehabilitation Act or its implementing regulations.

## IV.  CONCLUSION

For the reasons stated above, Roche's motion for summary judgment (doc. 21)

is hereby **GRANTED.**


SO ORDERED, this 9th day of May, 2006.

**/s/ Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/sew